UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    Plaintiff,

        v.                                             Civil Action No.  11-1280 (JEB)

RICHARD RETTA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

In bringing this suit, the Government claims Defendant Richard Retta violated the Freedom of Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248, when he interfered with a patient who was attempting to enter a Planned Parenthood clinic and the escorts who were assisting her.  Retta has now filed a Motion to Dismiss, contending that the Complaint suffers from three defects.  First, he maintains that the Government failed to plead that the patient was in fact obtaining, and the escorts were in fact providing, reproductive health services. Second, he argues that the Complaint lacks allegations sufficient to establish that Retta acted with the requisite motivation. Third, he insists that the Government is not statutorily authorized to seek a liquidated damages award of $5,000 on behalf of the alleged victims.

Although the Government's Complaint could certainly benefit from the addition of some fuller factual allegations, the Court believes it suffices to survive the Motion.   The Court will also reject Retta's challenge to the liquidated damages remedy, which it interprets as a Motion to Strike.

**I.**    **Background**

In 1994, "[r]eacting to a nationwide pattern of blockades, vandalism, and violence aimed at abortion clinics and their patients and employees, Congress enacted the [FACE] Act." Terry v. Reno, 101 F.3d 1412, 1414 (D.C. Cir. 1996) (citing 18 U.S.C. § 248). The statute provides penalties for and remedies against an individual who "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1).

In this case, the Government contends that Retta, a "regular anti-abortion protestor at the Planned Parenthood of Metropolitan Washington," Compl., ¶ 5, violated the FACE Act on January 8, 2011, when he "physically obstructed a patient from entering the Clinic, and physically obstructed Clinic escorts, such that the patient was only able to ultimately access the Clinic with the extraordinary assistance and intervention of another Clinic escort and staff." Id., ¶ 16. According to the Complaint, which, for purposes of the instant Motion, must be taken as true, Retta began speaking to the patient in front of the Clinic gate at approximately 11:20 am. Id., ¶ 17. After she "became visibly upset," two volunteer escorts offered to accompany her to the Clinic so that she "would not have to talk to [Retta]." Id., ¶¶ 18-19.

Retta walked alongside the patient and the two escorts for nearly the entire length of the approximately 35-foot walkway from the sidewalk to the Clinic door, shouting at the escorts as he went. Id., ¶¶ 19-20. About six feet from the entrance, Retta positioned himself immediately in front of the patient and the escorts and yelled, "Don't go in there. Don't let them kill your baby." Id., ¶¶ 20-22. The escorts repeatedly asked him to move out of the patient's way and attempted to guide her past him. Id., ¶ 21. Each time they tried to walk around him, however,

Retta "shifted his position, weaving to step in front of the patient" and preventing both the patients and the escorts from accessing the Clinic. See id., ¶ 23-24. It was only after a third escort "physical planted himself next to [Retta], preventing [him] from continuing to block the patient," and a security officer from the Clinic's front desk exited the Clinic to assist in guiding the patient inside the Clinic that she was able to enter. See id., ¶ 25.

On July 14, 2011, the United States filed a Complaint asserting a civil cause of action under the FACE Act. The Government seeks an Order, *inter alia*, prohibiting Retta from entering or coming near the Clinic gate and from committing further violations of the FACE Act, an award of statutory compensatory damages of $5,000 for "the three victims" of Retta's allegedly unlawful activity, and a civil penalty assessment in the amount of $10,000. See Compl., ¶ 35. Retta has now filed a Motion to Dismiss under Rule 12(b)(6), claiming that the United States has failed to plead a claim upon which relief can be granted.

## II.     Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he or she must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Twombly, 550 U.S. at 555, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the complaint, see Fed. R. Civ. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits. Fed. R. Civ. P. 10(c).

### III. Analysis

Our Circuit has held that "[t]o make out a violation [of the FACE Act] the Government ha[s] to prove that the defendant[ ] 1) by physical obstruction, 2) intentionally 3) injured, intimidated or interfered with or attempted to injure, intimidate or interfere with any person, 4) because that person is or has been obtaining or providing reproductive health services." United States v. Mahoney, 247 F.3d 279, 282 (D.C. Cir. 2001) (internal quotations omitted) (citing 18 U.S.C. § 248(a)(1)). Retta challenges the sufficiency of the Government's pleadings in three respects. First, he contends that the Government was required to — and did not — plead that the patient and the escorts were in fact obtaining or providing reproductive health services. Second, he asserts that the Government failed to plead facts establishing that Retta acted with the required motive. Finally, he insists that the Government cannot seek an award of liquidated damages. The Court will address each in turn.

### A. Pleading Requirements Concerning the Alleged Victims

Retta first argues that in order make out a claim under the FACE Act the Government must plead that the victims in fact were or had been obtaining or providing reproductive health services. See Mot. at 13-17. The FACE Act, he contends, does not prohibit actions taken against individuals who are not seeking or providing such services. See id. Because the Complaint does contain such allegations, Retta asks that the Court dismiss the case. See id. The Government, in response, maintains that the statute requires only that Defendant believed that the patient and the escorts were obtaining and providing reproductive health services. See Opp. at 4-8. As it has so alleged, it argues that the Court should deny Defendant's Motion. The question is thus whether the Government must allege both that the victims were actually recipients or providers and that Defendant so believed or merely the latter. The Court ultimately agrees with the Government that the latter is sufficient, particularly where, as here, such belief was reasonable.

The FACE Act prohibits individuals from committing certain intentional acts against "any person because that person is or has been, or in order to intimidate such person or any other person or class of persons from, obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1). This language is admittedly somewhat ambiguous. Although our Circuit has not directly addressed the question posed above, it has interpreted this portion of the statute to institute a "motive requirement," pursuant to which a FACE Act plaintiff must show that the alleged perpetrator "engag[ed] in proscribed conduct 'because' a person is obtaining or providing reproductive health services." Terry, 101 F.3d at 1420; see also Mahoney, 247 F.3d at 282-83. The Terry panel's labeling of this element as a "motive requirement," coupled with its emphasizing the word "because," suggests its focus was the defendant's subjective state of mind, not the victim's status or conduct.

Other courts that have interpreted this portion of the statute have also focused on the defendants' motives for acting rather than on the victims' conduct or status. For example, in United States v. Balint, 201 F.3d 928, (7th Cir. 2000), the Seventh Circuit found that "the defendants' concession that they wanted to protect fetuses, [one defendant's] commitment to the pro-life cause and the Clinic's notoriety as an ongoing provider of abortion services" was sufficient to establish motive. Id. at 934. The panel did not consider whether the targets of the defendants' obstruction were in fact seeking to obtain or provide reproductive health services, finding it sufficient that the defendants had acted with the intent to prevent the provision of such services in the future. See id. at 932-34. In New York ex rel. Spitzer v. Cain, 418 F. Supp. 2d 457 (S.D.N.Y. 2006), a district court in the Second Circuit referred to the "because" language in the statute as an "intent element" and found it satisfied because the goal of the defendants was "to discourage women from getting abortions." Id. at 474-75. Finally, a district court in the Third Circuit, United States v. Gregg, 32 F. Supp. 2d 151 (D.N.J. 1998), held that "the United States ha[d] satisfied its burden" to show that the defendants had acted "because the [clinic] provides, and its patients obtain, reproductive health services" by establishing that they were "motivated by their desire to stop abortions from occurring." Id. at 157. While these cases did not directly address the issue raised here — whether the targets of the defendants' conduct must have been providing or obtaining reproductive health services as a matter of fact — their treatment of the relevant statutory language as imposing an intent requirement, and not a requirement regarding the victim's status, is consistent with the Government's position here.

In addition, because the FACE Act was consciously "modeled on several Federal civil rights laws," S. Rep. No. 103-117, at 17, 18, 24-25 (1993); see also H.R. Rep. No. 103-306, at 10 (1993); Terry, 101 F.3d at 1420-21 (analogizing the FACE Act's motive element to that of other

6

civil rights statutes), it is worth noting that other such statutes using similar language have also been interpreted to focus on the defendant's mindset, not the victim's status or conduct. For example, Title VII's anti-retaliation provision is parallel to the relevant portion of the FACE Act. Compare 42 U.S.C. § 2000e-3(a) (prohibiting discrimination against an individual "because [that individual] has opposed any practice made unlawful employment practice by this subchapter" (emphasis added)) with 18 U.S.C. § 248(a)(1) (prohibiting physical obstruction of an individual "because that person is or has been . . . obtaining or providing reproductive health services" (emphasis added)). Another court in our Circuit has recently held that the anti-retaliation provision "focuses on the employer's subjective reasons for taking adverse action against an employee. Thus, it matters not whether the reasons behind the employer's discriminatory animus are actually correct as a factual matter." Johnson v. Napolitano, 686 F. Supp. 2d 32, 35 (D.D.C. 2010) (internal quotation marks and alterations omitted) (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 571 (3d Cir. 2002)). Courts have regularly interpreted the National Labor Relations Act and the Fair Labor Standards Act in the same way. See, e.g., Fogarty v. Boles, 121 F.3d 886, 891 (3d Cir. 1997) ("[T]he discharge of employees under the mistaken impression that they had participated in protected statutory activity is enough to violate the Acts."); Saffels v. Rice, 40 F.3d 1546, 1549-50 (8th Cir. 1994) (same); NLRB v. Parr Lance Ambulance Serv., 723 F.2d 575, 580 (7th Cir. 1983) (same).

Interpreting the statute to require that Defendant believed his alleged victims to have been obtaining or providing reproductive health services, but not necessarily that they were in fact doing so, also makes sense. Under Retta's reading, a defendant could intimidate a person entering a clinic that provides reproductive health services but escape liability if he was mistaken in believing that his target was obtaining or offering reproductive health services. This would

contravene the purpose of the statute, which, as its very title demonstrates, is to keep clinic access unimpeded. Retta, furthermore, does not cite any cases or other authority in support of his contention that the statute should be read to require that the victims were in fact obtaining or providing reproductive health services. See Mot. at 13-17.

Retta counters by proffering another hypothetical: "If the United States is correct, then an individual standing outside a[] coffee shop . . . who engages in obstructive conduct because . . . in her deluded condition she believes that coffee house customers are, in fact, reproductive health care patients of a covered facility, would be in violation of the FACE Act, despite Congress' effort to craft a remedy to insure access to 'clinic entrances.'" Reply at 5. Perhaps a case in which a defendant held an unreasonable belief that his targets were obtaining reproductive health services might present a different question. Here, however, it is clear that Retta's beliefs were reasonable because the Clinic was in fact providing such services. See Compl., ¶ 7.

Ultimately, the Court concludes that the statute focuses on the defendant's motive, not the targets' conduct. A FACE Act complaint, therefore, need only contain allegations establishing that a defendant acted under the belief that his alleged victims were obtaining or providing reproductive health services; allegations that they were in fact doing so, accordingly, are not required.

That said, this debate would have been unnecessary had the Government simply alleged that the patient herself was obtaining reproductive health services and that the escorts' duties (which are never fully explained) constituted provision of such services. To fortify its argument, the Government may wish to amend its Complaint in these areas. Even if it chooses not to do so, however, its allegations clear — if not by much — the pleading bar set by Rule 8(a).

B. <u>Sufficiency of Allegations Regarding Defendant's Motivation</u>

Although the Government need not plead that the alleged victims were obtaining or providing reproductive health services, it must still satisfy the statute's "motive requirement," which requires that Defendant engaged in the obstructive acts <u>because</u> of his belief that his targets were obtaining or providing such services. <u>See</u> 18 U.S.C. § 248(a); <u>Mahoney</u>, 247 F.3d at 282-84; <u>Terry</u>, 101 F.3d at 1420. As discussed in Part III.A., *supra*, this is a subjective inquiry. Retta contends that the Government failed to make out a claim because its Complaint "omits any factual allegations regarding the motivation of the Defendant." Mot. at 17. He insists that although the Complaint contains a "bare legal conclusion" concerning Retta's motivation, it does not contain factual assertions sufficient for a factfinder to infer that he held the required motive. <u>See</u> Mot. at 18-19. The Court disagrees.

What Retta dismisses as a "legal conclusion" states that Defendant interfered with his targets "because they were or had been providing or obtaining reproductive health services, or in order to intimidate such persons from providing or obtaining reproductive health services at the Planned Parenthood of Metropolitan Washington." Compl., ¶ 27. In addition, the Complaint alleges that Retta has a history of aggressive protest activity at the Clinic. <u>See</u> <u>id.</u>, ¶¶ 8-15. For more than a decade, the Government asserts, Retta has been a vocal anti-abortion protestor who "frequently walks very closely beside patients as they walk to the Clinic," <u>id.</u> at ¶ 8, and "continues to yell" at patients even "as the door closes." <u>Id.</u>, ¶ 12. In this particular instance, the Complaint states that Retta "yelled at the escorts that they should not be escorting the patient into the Clinic" and "yelled to the patient, 'Don't go in there. Don't let them kill your baby.'" <u>Id.</u>, ¶¶ 19, 22.

The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he or she must thus be given every favorable inference that may be drawn from the allegations of fact. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007). These factual assertions, taken as true, suffice to support the Government's inference that Retta was in fact motivated by his belief that his targets were obtaining or providing reproductive health services. Cf., e.g., Gregg, 32 F. Supp. 2d at 157 (finding defendants' statements expressing their opposition to abortion and engaging in blockade during anti-abortion protest to be sufficient to demonstrate motive). If Retta wishes to argue that he did not in fact have the requisite motivation, he may of course do so; the allegations contained in the Complaint, however, suffice to state a claim upon which relief can be granted.

   C.  Liquidated Damages

Retta's final argument concerns remedy. In its prayer for relief, the Government asks that the Court award "statutory compensatory damages of $5,000 to the three victims." Compl. at 6-7. Retta argues, however, that although the statute allows private plaintiffs to seek a liquidated damages award of $5,000, Congress did not authorize the Attorney General to do so. See Mot. at 19-20.

As a preliminary matter, the Government rightly points out that this argument is not appropriately proffered in a 12(b)(6) Motion to Dismiss. See Simba v. Fenty, 754 F. Supp. 2d 19, 23 (D.D.C. 2010) (stating that Rule 12(f) Motion to Strike, not Rule 12(b)(6) Motion to Dismiss, is appropriate means of challenging remedy). Like the Government, therefore, the Court will interpret this portion of the Motion as a Motion to Strike.

In an action brought by an aggrieved individual, the FACE Act provides that "the court may award appropriate relief, including . . . compensatory . . . damages . . . . With respect to

compensatory damages, the plaintiff may elect, at any time prior to the rendering of final judgment, to recover, in lieu of actual damages, an award of statutory damages in the amount of $5,000 per violation." 18 U.S.C. § 248(c)(1)(B). In an action, like this one, brought by the United States, the statute states that "the court may award appropriate relief, including . . . compensatory damages to persons aggrieved as described in paragraph (1)(B)." Id. § 248(c)(2)(B). Retta argues that because "Congress provided the liquidated damage remedy in subsection (c)(1)(B) and omitted it in subsection (c)(2)(B)," the Court should conclude that the Government is precluded from electing the statutory damage award. See Mot. at 20.

The plain language of § 248(c)(2)(B), which details the remedies available in suits brought by the United States, however, incorporates the liquidated damages provision of § 248(c)(1)(B). It expressly provides that the Attorney General may seek "compensatory damages to persons aggrieved as described in paragraph (1)(B)." 18 U.S.C. § 248 (c)(2)(B) (emphasis added). With this language "Congress plainly meant to incorporate all of the text relevant to compensatory damages as set out in § 248(c)(1)(B)." United States v. Gregg, 226 F.3d 253, 260 (3d Cir. 2000). Otherwise, why refer to § 248(c)(1)(B) at all?

The Third Circuit came to the same conclusion in Gregg, 226 F.3d at 260 (statute provides Government may "elect an award of statutory damages"), and Retta points to no court that has held otherwise. The legislative history, moreover, is consistent with this reading. See, e.g., H.R. Rep. No. 103-106, at 3 (1993) ("The Act authorizes the U.S. Attorney General . . . to bring civil causes of action on behalf of aggrieved persons for the same relief available in private actions."); see also S. Rep. No. 103-117, at 22 (1993).

The Court, therefore, finds that the FACE Act permits the United States to seek statutory compensatory damages on behalf of aggrieved individuals.

## IV. Conclusion

For the foregoing reasons, the Court ORDERS that:

1. Defendant's Motion to Dismiss is DENIED; and

2. He shall file an Answer on or before January 24, 2012.

**SO ORDERED**.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 10, 2012